UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

| | |
|---|---|
| YURY SAARYAN,<br><br>Petitioner,<br><br>v.<br><br>ICE FIELD OFFICE DIRECTOR and BRUCE SCOTT, Warden of the Northwest ICE Processing Center,<br><br>Respondents. | CASE NO. 2:26-cv-1412-JNW<br><br>ORDER |

## 1. INTRODUCTION

Petitioner Yury Saaryan, proceeding pro se, seeks a writ of habeas corpus ordering his release from immigration detention. For the reasons below, the Court DENIES the petition without prejudice.

Saaryan, a native of Russia, entered the United States as a nonimmigrant visitor for business around July 25, 2017, with permission to stay until January 24, 2018. Dkt. No. 10 ¶ 4. He stayed longer. On August 27, 2025, Saaryan voluntarily presented himself to Immigration Customs and Enforcement (ICE) at the Seattle Enforcement and Removal Operations in Tukwila, Washington. Dkt. Nos. 12 ¶¶ 1,

3; 10 ¶ 6. ICE immediately detained Saaryan and transferred him to the Northwest ICE Processing Center (NWIPC). Dkt. No. 10 ¶ 7. ICE also served Saaryan with a Notice to Appear, charging him under 8 U.S.C. § 1227(a)(1)(B) as a noncitizen "whose nonimmigrant visa . . . has been revoked[.]" *Id.*

On October 10, 2025, an Immigration Judge (IJ) denied Saaryan's request for bond, finding him a danger to the community and a flight risk. Dkt. No. 11-3 at 2. The IJ's denial order does not contain her reasoning. *Id.* On November 25, 2025, Saaryan withdrew his pending applications for asylum and withholding of removal under the Convention Against Torture, and an IJ granted him "pre-conclusion voluntary departure." Dkt. No. 11-1 at 2–3. ICE continued to detain Saaryan but failed to obtain travel documents for his removal to Russia, despite Saaryan's repeated inquiries. Saaryan has now been detained by ICE for around 11 months.

One matter before the merits. Saaryan's original petition named only the ICE Field Office Director, and Respondents ask the Court to dismiss it on the ground that this official is not Saaryan's immediate custodian. Dkt. No. 9 at 1 n.1. But Saaryan's amended petition names Bruce Scott, the warden of the Northwest ICE Processing Center, as the official with immediate custody over him. Dkt. No. 6-1. That answers the objection. The Court treats the amended petition as the operative pleading.

## 2. LEGAL STANDARD

Federal courts have authority to grant writs of habeas corpus to any person held "in custody in violation of the Constitution or laws or treaties of the United

States." 28 U.S.C. § 2241(c)(3). Habeas corpus "entitles [a] prisoner to a meaningful opportunity to demonstrate that he is being held pursuant to 'the erroneous application or interpretation' of relevant law." *Boumediene v. Bush*, 553 U.S. 723, 779 (2008) (quoting *INS v. St. Cyr*, 533 U.S. 289, 302 (2001)). "The essence of habeas corpus is an attack by a person in custody upon the legality of that custody," so a petitioner must demonstrate that his detention is unlawful to warrant relief. *Preiser v. Rodriguez*, 411 U.S. 475, 484 (1973); *see Lambert v. Blodgett*, 393 F.3d 943, 969 n.16 (9th Cir. 2004) ("In state collateral litigation, as well as federal habeas proceedings, it is the petitioner who bears the burden of proving his case."); see also Davis v. Woodford, 384 F.3d 628, 638 (9th Cir. 2004) ("petitioner carries the burden of proving by a preponderance of the evidence that he is entitled to habeas relief" when challenging incarceration by the state under 28 U.S.C. § 2254). A district court's habeas jurisdiction extends to challenges to immigration-related detention. *Zadvydas v. Davis*, 533 U.S. 678, 687 (2001); *Demore v. Kim*, 538 U.S. 510, 517 (2003).

## 3. DISCUSSION

Saaryan argues that his continued detention violates due process because there is no significant likelihood he will be removed in the reasonably foreseeable future, he is not a flight risk, and he has done everything ICE has asked of him. Because Saaryan is subject to a final order of removal, his detention is governed by 8 U.S.C. § 1231.

In *Zadvydas*, the Supreme Court held that 8 U.S.C. § 1231(a)(6) "does not permit indefinite detention." 533 U.S. at 689. The statute allows detention only for

"a period reasonably necessary to bring about that [noncitizen]'s removal from the United States." *Id.* "[O]nce removal is no longer reasonably foreseeable, continued detention is no longer authorized by statute." *Id.* at 699. The Court set six months as the "presumptively reasonable" period of post-removal-order detention. *Id.* at 701. After six months, "once the [noncitizen] provides good reason to believe that there is no significant likelihood of removal in the reasonably foreseeable future, the Government must respond with evidence sufficient to rebut that showing." *Id.* Importantly, "as the period of prior postremoval confinement grows, what counts as the 'reasonably foreseeable future' conversely would have to shrink." *Id.* The Government's burden to justify continued detention thus becomes increasingly demanding over time.

More than 90 days have passed since Saaryan's removal order became final on March 25, 2026, so 8 U.S.C. § 1231(a)(6) governs his current detention. That provision authorizes continued detention after the 90-day removal period for certain categories of noncitizens or release under conditions of supervision. *See Zadvydas*, 533 U.S. at 682. But the six-month period of presumptive reasonableness has not yet passed.

Saaryan's post-removal-order detention has lasted just under four months, which leaves it within the "presumptively reasonable" period under *Zadvydas*, 533 U.S. at 701. That presumption can be rebutted, but only it Saaryan presents contrary evidence. *Ndandu v. Noem*, 819 F. Supp. 3d 1155, 1160 (S.D. Cal. 2026) (quoting *Godoy v. Spearman*, 861 F.3d 956, 965 (9th Cir. 2017)) ("Generally, 'a "presumption" can be rebutted only by contrary evidence.'").

Saaryan argues that ICE has failed to obtain the proper documents needed to carry out his removal. Indeed, Saaryan was prevented from leaving the country during the voluntary departure window due to ICE's failure to obtain the proper travel documents. In a declaration, Saaryan states that, because he lost his passport, he contacted the Russian consulate and they told him the process of obtaining travel documents while he's detained could take "many months, potentially up to fourteen[] months." Dkt. No. 12 ¶ 19.

Respondents submit a declaration from Deportation Officer Sooseon Jeon, who confirms that ICE submitted a travel document request to the Russian Embassy and that "ERO was informed that [Saaryan's] travel document request was pending [on April 7, 2026]." Dkt. No. 10 ¶¶ 18–19. Jeon also states that "ERO believes there is a significant likelihood of removal in the reasonably foreseeable future[.]" *Id.* ¶ 21.

Neither declaration says much about when removal will happen. Saaryan does not say when he called the Russian consulate, so his 14-month estimate runs from no fixed starting point. And Respondents offer no timeline beyond ERO's general belief. Given that a request for documentation is pending with the Russian embassy, and Saaryan does not overcome his burden to prove this will not soon result in his removal, the Court finds the presumption of reasonableness controls.

The Court notes, however, that in dismissing this case for lack of unreasonably prolonged detention, it does so without prejudice because while a period may be reasonable at a given point in time, it can become unreasonable later. Saaryan may return to this Court if he obtains evidence that he is unlikely to be

deported in the foreseeable future, or if his detention goes beyond the six-month period. Accordingly, the Court DENIES Saaryan's petition for a writ of habeas corpus without prejudice.

Dated this 22nd day of July, 2026.

Jamal N. Whitehead
United States District Judge